UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
  SAVOLA HOUSTON,

                          Plaintiff,

       -against-

CAROLYN W. COLVIN, Commissioner of Social
Security,

                       Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-03842 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Savola Houston brings this action pro se pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of a decision by the Social Security Administration ("SSA") that she was not disabled in the period from November 11, 1998, to December 31, 2003. (Compl. (Dkt. 1).) The Acting Commissioner of Social Security ("Commissioner") moved, and Plaintiff cross-moved, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the judgment of the Commissioner is AFFIRMED.

**I.    BACKGROUND**

Plaintiff was born on May 20, 1966. (Admin. R. (Dkt. 30) at 65.) She has previously worked as a bank teller, a day care teacher, and an elementary school teacher's aide. (Id. at 69.) On November 11, 1998, Plaintiff fell down a stairwell at a subway station. (Id. at 90.) At the time of the accident, Plaintiff incurred a knee injury and was dizzy and disoriented following the fall. (Id. at 164.) Between the time of the accident and December 31, 2003—the date she was last insured for disability benefits—Plaintiff received medical treatment from a number of medical providers for complications associated with her fall. (See generally Mem. of Law in

Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem.") (Dkt. 28) at 5-10.) On July 19, 2001, Plaintiff fell again and injured her foot. (Admin. R. at 180-86.) On March 2, 2006—after the date that she was last insured—Plaintiff injured her right arm in a motor vehicle accident. (Id. at 107-16.)

On April 13, 2006, Plaintiff protectively filed a pro se application for disability insurance benefits and Supplemental Security Income ("SSI"), due to a mental disorder and joint and back problems dating back to November 12, 1998.[1] (Id. at 16, 25.) On January 3, 2007, the SSA denied her application for disability insurance benefits.[2] (Id. at 22.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on her application, which was initially held on November 3, 2009, before ALJ Harvey Feldmeier. (Id. at 224.) At the hearing, the ALJ explained to Plaintiff the benefits to obtaining legal representation in Social Security matters and gave her an opportunity to retain counsel and postpone the hearing. (Id. at 227.) Plaintiff proceeded with the hearing without counsel. (Id. at 229.) After considering Plaintiff's history, the ALJ explained that the best way to proceed was to subpoena Plaintiff's doctors in order to obtain additional records to support her case. (Id. at 257-68.)

After the subpoenas were issued, the hearing continued on June 14, 2010. (Id. at 203.) At the hearing, the ALJ explained to Plaintiff that the doctors the ALJ had subpoenaed either did not provide information or provided incomplete information. (Id. at 92-101, 198-200, 204.) Prior to rendering a final decision, the ALJ gave Plaintiff the opportunity to take about thirty

---

[1] In order to be eligible for disability benefits, Plaintiff must have become disabled while she had Social Security insured status as determined by the SSA based upon the number of years she spent in the workforce. See Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989). The last date that Plaintiff met the insured status requirement is December 31, 2003. (Admin. R. at 48, 66.) Therefore, the relevant period at issue in this case is between November 12, 1998, and December 31, 2003.

[2] Plaintiff's SSI claim was granted with an onset date of April 1, 2006. (Id. at 21, 49.)

2

days to collect more documents that could prove her disability. (Id. at 216-17, 221-22.) On August 24, 2010, the ALJ issued a written decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at 16-20.)

On October 12, 2010, Plaintiff requested that the SSA review the ALJ's decision. On October 26, 2011, the Appeals Council granted Plaintiff additional time to submit evidence prior to rendering a decision on her case. (Id. at 8.) On April 10, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Id. at 4-6.)

On July 31, 2012, Plaintiff filed the instant Complaint seeking judicial review of the SSA's denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Compl.) Plaintiff and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Def. Mem.; Reply in Opp'n to Def.'s Mot. to Dismiss ("Pl. Mem.")[3] (Dkt. 23).) Plaintiff also submitted 76 pages of documents with her motion, many of which are duplicates of documents in the record. (Pl. Mem. at 2-77.) The court construes this submission as a request for further administrative proceedings to enable the ALJ to evaluate the additional evidence.

## II. LEGAL STANDARDS

### A. Administrative Review

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti

---

[3] Plaintiff's motion is filed as a Reply to Defendant's Motion to Dismiss. (See Pl. Mem. (Dkt. 23).) As Plaintiff is proceeding pro se, the court construes her motion to be a Motion for Judgment on the Pleadings.

3

v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

**B.     Determination of Disability**

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id.; § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id. If at any point in the five-step analysis the ALJ finds that the Plaintiff is not disabled, this terminates the analysis, and there is no need for the ALJ to proceed further. Dejesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011).

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

### C. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

## III. DISCUSSION

Plaintiff argues that the ALJ erred in concluding that she was not disabled during the period from November 12, 1998 (the alleged onset date), through December 31, 2003 (the date last insured). (See Compl.) The court construes her generalized pro se Complaint to contend that the ALJ's ruling that Plaintiff's medical impairment was not severe and that she was therefore not disabled misapplied the law and was not substantiated by the evidence. (See Pl. Mem.)

### A. The ALJ's Five-Step Sequential Analysis

Plaintiff does not appear to dispute the first step of the ALJ's five-step analysis—that she had "not engage[d] in substantial gainful activity during the period from her alleged onset date of November 12, 1998 through her date last insured of December 31, 2003." (Admin. R. at 17.)

At step two, the ALJ found, based on the medical evidence, that Plaintiff had a number of medically determinable impairments. (See id. at 17.) However, the ALJ concluded that Plaintiff's medical condition was not "severe" because there was no showing that the impairments significantly limited her ability to perform basic work-related activities for 12 consecutive months. (Id. at 17, 19.) Plaintiff's challenge, therefore, boils down to whether the ALJ's conclusion regarding the "severity" of her impairment was based upon the correct legal standard and was supported by evidence in the record. See Shaw, 221 F.3d at 131. The court concludes that this is indeed the case.

#### 1. The Severity Requirement

Under SSA regulations, the second step requires an evaluation of severity over time. According to the regulations, "[a]t the second step, . . . [i]f you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509,

7

or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. § 404.1520.

A condition is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. See id. § 404.1521(a). Such basic work activities include: walking; standing; sitting; lifting; pushing; pulling; reaching; carrying; handling; seeing; hearing; speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id. § 404.1521(b). "[T]he standard for a finding of severity under Step Two of the sequential analysis is de minimis and is intended only to screen out the very weakest cases." McIntyre v. Colvin, No. 13-CV-2886, 2014 WL 3030378, at *3 (2d Cir. July 7, 2014) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)).

The disability resulting from a medically determinable impairment must have prevented the claimant from performing any substantial gainful activity for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509; see generally Barnhart v. Walton, 535 U.S. 212 (2002). The burden is on the plaintiff to provide medical evidence to support his claim that he or she suffers from a disabling impairment. See 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(G). To meet this burden, the plaintiff must provide reports about the impairment from "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a).

In this case, the ALJ's decision demonstrates that he applied the correct legal standards. The decision noted that "the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled," and cited to the regulations setting forth these steps. (Admin. R. at 17.) The ALJ then thoroughly discussed the regulations relevant to each step of the process, before determining that Plaintiff had not engaged

in substantial gainful activity but did not have a severe impairment that lasted for a continuous period of not less than 12 months. (Id. at 17, 19.) The court finds no legal error in the ALJ's five-step sequential analysis.

2. Evidentiary Support

The ALJ found that Plaintiff did not establish that her physical impairments rose to the level of interfering with her ability to perform basic work activities for a continuous period of at least twelve months prior to December 31, 2003, her date last insured. (Id. at 19.) The court concludes that the ALJ's decision is supported by substantial evidence.

The record establishes that Plaintiff fell down a subway staircase on November 11, 1998, and sought treatment for her neck, lower back, and right knee. (See, e.g., id. at 191-96). After the fall on November 11, 1998, Plaintiff was brought to Woodhull Medical Center where X-rays were conducted and a cervical collar was provided to her. (Id. at 192.) Plaintiff then presented to the emergency room at Interfaith Medical Center on November 14, 1998. (Id. at 191-96.) She complained of generalized aches in her head and buttocks. (Id. at 192.) Plaintiff was diagnosed with post-concussion syndrome. (Id.)

When Plaintiff saw Dr. Paul Raphael, a rehabilitation specialist, on November 17, 1998, examination revealed abnormal neurological findings, decreased motor strength, slow gait, and limited ranges of motion in the low back and cervical spine. (Id. at 164-65.) Dr. Raphael diagnosed traumatic cervical myofascitis with radiculopathy, traumatic lumbar myofascitis with radiculopathy, post concussive syndrome, and right post-traumatic knee derangement. (Id. at 165.) He ruled out lumbar disc herniation, cervical disc herniation, and a meniscal/ACL tear. (Id.) Dr. Raphael opined on that day that Plaintiff was "totally disabled at present." (Id. at 166.) In a follow-up visit to radiologist Dr. Robert Solomon on November 18, 1998, X-rays suggested

pelvic phlebolith formation and spina bifidia, but no fractures. (Id. at 172.)

Shortly thereafter, Plaintiff was evaluated by two other specialists. On November 21, 1998, neurologist Dr. Enrico Fazzini examined Plaintiff. (Id. at 176.) The examination revealed a limited range of motion in the right knee, diminished tendon reflexes, and weakness in certain muscles. (Id. at 177.) Dr. Fazzini diagnosed cervical and lumbar myofascial pain syndrome with radiculopathy, internal derangement of the right knee, and ruled out cervical and lumbar disc herniation. (Id. at 176-78.) Dr. Fazzini opined that Plaintiff was "totally disabled at present." (Id. at 178.)

When Dr. Surendranath Reddy, an orthopedist, evaluated Plaintiff on December 7, 1998, he elicited similar examination findings and diagnosed traumatic paracervical myofascitis and radiculitis, tramautic paralumbar myofacitis with radiculopathy, post-concussion syndrome, internal derangement of the right knee, and ruled out cervical and lumbar disc herniation. (Id. at 174-75.) Dr. Reddy also opined that Plaintiff was "totally disabled at present." (Id. at 175.)

Plaintiff saw Dr. Raphael again on December 21, 1998. (Id. at 168.) Plaintiff displayed only moderate tenderness and moderately limited range of motion in the cervical and lumbar spine. (Id.) Dr. Raphael assessed cervical myofacitis with radiculopathy, lumbar myofascitis with radiculopathy, right knee internal derangement, and ruled out cervical and lumbar disc herniation. (Id.) Dr. Raphael noted that Plaintiff was expected to suffer decreased cervical and lumbar range of motion and function, as well as decreased right knee range of motion and function, as a direct result of her fall. (Id. at 169.) However, he did not opine that Plaintiff was totally disabled. (See id.) In a follow-up visit radiologist Dr. Solomon on December 29, 1998, an MRI revealed reversed lordosis but did not reveal any disc bulges or herniation. (Id. at 167, 170.) Electromyography testing ("EMGs") was performed on January 25, 1999, showing that

Plaintiff suffered from radiculopathy. (Id. at 171.)

Billing records from the Paul J. Cooper Medical Center ("PJC") indicate that Plaintiff received mental health treatment on August 18 and 31, and October 21, 1998, and also on September 17, 22, 23, and 27, 1999. (Id. at 102-03.) Letters from PJC dated October 22, 2009, and November 9, 2009, state that Plaintiff received mental health treatment in 1998 and 1999, but her records could not be located. (Id. at 91, 198.)

Plaintiff went to Jamaica Hospital Medical Center ("JHMC") on July 25, 2001, after falling and injuring her foot on July 19, 2001. (Id. at 183-86.) X-rays of her left foot showed a nondisplaced fracture at the base of the proximal fifth phalanx. (Id. at 179.) An ACE bandage was applied, and Motrin was prescribed. (Id. at 183.) On August 9, 2001, Plaintiff stated that she was feeling better and had less pain. (Id. at 182.)

On August 10, 2001, Plaintiff presented at the JHMC orthopedic clinic in a wheelchair. (Id. at 180.) The examiner wrote, "[w]hen asked why she is in a wheelchair she initially refused to answer and then finally said she had multiple injuries but refused to elaborate." (Id.) On examination of her left foot, there was no gross deformity, erythema, effusion, or pain on ankle range of motion.[4] (Id.)

In sum, although these records indicate that Plaintiff's fall in 1998 resulted in acute injuries, they reflect Plaintiff's condition only immediately after her accident. Meanwhile, the medical opinions from 2001 do not mention post-concussive syndrome, traumatic cervical myofascitis with radiculopathy, traumatic lumbar myofascitis with radiculophathy, right post-traumatic internal knee derangement, or other conditions diagnosed in late 1998 and early 1999. (Id. at 180-86.) The record therefore falls short of establishing that Plaintiff's impairments were present for at least twelve months, as required by the regulations. As a result, Plaintiff has failed

---

[4] Plaintiff suffered other medical impairments after the date last insured. (See generally Def. Mem. at 10-14.)

to satisfy her burden under the statute. The ALJ's conclusion is therefore adequately supported by evidence in the record.

B.  **Development of the Record**

It is apparent that the record in this case was imperfect due to the substantial passage of time. The question, then, is whether the ALJ satisfied his burden of developing the record. An ALJ "has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Pogozelski, 2004 WL 1146059, at *10. That duty is "heightened" when, as here, the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009); see also 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . or other medical source to determine whether the additional information we need is readily available.").

Here, the court concludes that the ALJ fully satisfied his heightened duty to investigate facts and develop the record. Initially, evidence was requested from Brookdale Hospital, Interfaith Medical Center, Kingsbrook Hospital, Long Island College, and Arbor WeCare. (Admin. R. at 159-63.) After an initial hearing, the ALJ attempted several times to obtain records from Plaintiffs' physicians—issuing as many as ten subpoenas—without success. (Id. at 92-101, 200.) These subpoenas went out to JHMC, PJC, Dr. Raphael, Kingsbrook Hospital, and Whitman Ingersoll Farragut Health Center. (Id.) As this record was being developed many years after the onset of Plaintiff's alleged disability, many doctors did not have the requested records. (Id. at 91, 198.) Once the hearing continued, the ALJ explained to Plaintiff that the doctors the ALJ had subpoenaed either did not provide information to the court or they provided

12

incomplete information. (Id. at 204.) Prior to rendering a final decision, the ALJ gave Plaintiff the opportunity to take about thirty days to collect more documents that could prove her disability. (Id. at 216-17, 221-22.) Finally, in explaining his conclusion, the ALJ noted that he repeatedly attempted to obtain medical records without success. (Id. at 19.) In sum, although he was unsuccessful in obtaining medical information that would fill the gaps in the record, the ALJ fully satisfied his heightened burden to investigate the facts of the case and develop the record prior to rendering his decision.

### C. New Evidence Proffered by Plaintiff

Plaintiff provides about 76 pages of new documents to the court with her Motion for Judgment on the Pleadings. (Pl. Mem. at 2-77.) Many of these documents are out of order, while others are duplicates or outside of the relevant period. (Id.) It is difficult to discern Plaintiff's exact purpose in proffering these documents as she does not mention them in her motion, but the court construes the submission as a request that the court remand the case for reevaluation of the newly included evidence.

The court can remand a case to the ALJ on the basis of Plaintiff proffering new evidence in certain specific situations. See 42 U.S.C. § 405(g). Remand is appropriate only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. Id. In other words, a plaintiff appealing a SSA decision must show that: (1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) that the proffered evidence is material; and (3) that there exists good cause for her failure to present the evidence earlier. See Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). To be material, the proffered evidence must be both relevant to the claimant's condition during the time period for which benefits were denied and probative.

Id. "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id.

Of the documents that Plaintiff provided to the court, nine are duplicates of documents already in the record and need not be considered. (See Admin. R. at 9, 11, 17, 31, 39, 42, 47, 69, 71.) Twenty-seven of these documents are dated outside of the relevant period or are completely lacking a date. (Id. at 2, 10, 14-16, 27-30, 32-33, 35, 40-41, 43-44, 46, 48, 56, 61-62, 64-68, 72-73.) The remaining thirty-six pages of documents are both new to the record and within the relevant time period, including: (1) a complaint verification for Plaintiff's personal injury suit; (2) a phase II SSI pending letter dated July 12, 2001; (3) Medicaid statements for appointments ranging from February 25, 1998 to December 7, 1999; (4) bills for physical therapy appointments and treatments ranging from November 17, 1998 to May 27, 1999; (5) two records from Woodhull Medical Center dated November 11, 1998; (6) a prescription by Dr. Raphael dated March 4, 1999; (7) a prescription purchase history from a pharmacy for the period between January 20, 2001, and July 26, 2001; (8) the record of an evaluation performed by Dr. Fazzini on April 16, 1999; and (9) the record of physical therapy evaluations on March 17, 1999, and January 4, 1998. (Id. at 4-8, 12-13, 18-26, 34-38, 41, 45, 49-55, 57-60, 63, 70-71, 75-77.)

The court concludes that none of the new evidence Plaintiff proffers satisfies the materiality requirement. The verification of the Complaint and the SSI pending letter are both duplicative of information already in the record and also do not provide any insight into whether or not Plaintiff was disabled. (Pl. Mem. at 51, 60.) These materials are not medical in nature and certainly are not probative. It is clear that they would not have changed the opinion of the ALJ even had they been considered.

Plaintiff's bills for physical therapy and statements from Medicaid are similarly not

material. (Pl. Mem. at 4-8, 18-26, 50, 52-55, 58-59, 70, 76-77.) It is undisputed that Plaintiff had serious medical issues during the relevant period as a result of her fall. What is in dispute is whether Plaintiff was disabled as a result of her medical impairment. 42 U.S.C. § 423(d)(1)(A). The ALJ was aware that Plaintiff was receiving physical therapy based upon the evaluations by her treating physicians already in the record. (Admin. R. at 178.) Similarly, there were Medicaid statements already in the record. (Id. at 102-103.) In spite of the presence of this evidence in the record, the ALJ concluded that Plaintiff was not disabled. The newly proffered evidence demonstrating that Plaintiff received physical therapy and other medical treatment during the relevant period could not have changed the ALJ's ultimate conclusion regarding the duration of Plaintiff's condition.

Similarly, it is well-established in the record that Plaintiff was injured on November 11, 1998, and therefore the new documents from the Woodhull Medical Center, relating to Plaintiff's hospital visit on that date are not material. (Id. at 57; see also id. at 19, 90, 164, 174, 176; Def. Mem. at 3.) Dr. Raphael's and Dr. Fazzini's reports in the record already state that Plaintiff was taken to the Woodhull Medical Center on that date. (Id. at 164, 176.) The primary reason that Plaintiff was unable to obtain disability benefits is that she was unable to prove that her disability lasted for longer than the requisite twelve months. (Id. at 19.) Thus, a new document from the alleged onset date does not alter that conclusion, and therefore this document cannot provide the basis for remand.

The prescription from Dr. Raphael prescribing Motrin to Plaintiff on March 3, 1999, is likewise not material. (Pl. Mem. at 49.) The prescription does not include any evaluation of Plaintiff at the time it was issued, and therefore could not have changed the opinion of the ALJ. (Id.) Similarly, the prescription purchase history Plaintiff provided was not previously included

15

in the record, but it does not give any information about Plaintiff's disability—only that she was prescribed medication from the period between January 20, 2001, and July 26, 2001. (Id. at 63.) The ALJ likely would not have concluded that Plaintiff obtaining prescription medication as probative to whether or not Plaintiff was disabled.

Finally, the evaluations by Plaintiff's physical therapist and by Dr. Fazzini are the most relevant materials Plaintiff provides, but still do not satisfy the materiality requirement. (Pl. Mem. at 12-13, 34-37, 38, 41, 45, 75.)[5] The physical therapy evaluations list a treatment plan and some symptoms but do not provide any opinions about Plaintiff's condition. (Id. at 34, 38.) Additionally, these physical therapy evaluations are dated shortly following Plaintiff's alleged onset date: January 4, 1998,[6] and March 17, 1999. Even if they were able to provide the ALJ with information about Plaintiff's disability, they would not be able to establish the duration of Plaintiff's disability over twelve months, and are therefore not material.

Similarly, Dr. Fazzini's evaluation is dated April 16, 1999. (Id. at 36, 45.) The evaluation notes that Plaintiff suffers from cervical and lumbar myofascial syndrome with evidence of radiculopathy and internal derangement of the right knee. (Id.) On another page, which lacks a date, Dr. Fazzini opines that "patient is totally disabled at present." (Id. at 35.) As with the rest of Plaintiff's submission, these documents appear multiple times out of order within the set of documents Plaintiff provided to the court. (Id. at 12-13, 35-37, 41, 45.) While the page containing the opinion evidence could be a part of the document from Plaintiff's appointment with Dr. Fazzini on April 16, 1999, it is far more likely that this is a duplicate of the evaluation dated November 21, 1998, which was already in the record, as these pages are identical in every way. (Compare id. at 35, 45, with Admin. R. at 178.)

---

[5] These documents are duplicated many times within this set of documents. (Pl. Mem. at 12-13, 34, 36-7, 38, 75.)
[6] It is likely that this document was misdated and intended to be January 4, 1999, about two months following Plaintiff's accident. Otherwise, document would fall outside of the relevant period.

Even if the newly proffered document were from the April 16, 1999 appointment, it is not material and thus does not justify remand back to the ALJ. This is because an additional appointment and opinion from Dr. Fazzini from April 16, 1999, would not have been enough for the ALJ to find that Plaintiff met the duration requirement. The ALJ had already considered Dr. Fazzini's opinion that Plaintiff was completely disabled immediately following her accident. (Admin. R. at 19.) The ALJ ultimately concluded that this opinion was not entitled to great weight because "[Dr. Fazzini] examined the claimant shortly after her accident and there is no subsequent opinion detailing her ability to function one year after her onset." (Id.) Even if this opinion were from the appointment about five months after Plaintiff's initial accident, it would not have established that Plaintiff had met the twelve-month duration requirement, which was the primary shortcoming of Dr. Fazzini's opinion already in the record. (Id.)

Finally, even if the above-mentioned new evidence were considered to be material, Plaintiff does not establish good cause for not having included these documents earlier in her disability application process. Tirado, 842 F.2d at 597. Plaintiff was notified multiple times of the ALJ's need for comprehensive medical records and has failed to present any reason for adding new evidence at this late stage.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, Plaintiff's Cross-Motion for Judgment on the Pleadings is DENIED, and the decision of the ALJ is AFFIRMED.

SO ORDERED.

Dated: Brooklyn, New York
September 3, 2014

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge